# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC MARINE CENTER, INC., A California Corporation, and SONA VARTANIAN, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>PHILADELPHIA INDEMNITY INSURANCE COMPANY, a Pennsylvanian Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.  1:13-cv-00992-AWI-SKO<br><br>**ORDER REQUIRING PLAINTIFFS TO PRODUCE DOCUMENTS**<br><br>(Doc. No. 23) |

## I. INTRODUCTION

The parties have been engaged in a dispute regarding discovery propounded by Defendant Philadelphia Indemnity Insurance Company ("Philadelphia") on March 11, 2014, and June 16, 2014, to Plaintiffs Pacific Marine Center, Inc. ("Pacific Marine") and Sona Vartanian ("Sona") (collectively, "Plaintiffs").  (*See* Doc. 13-1, p. 7; p. 26.)   The March 2014 discovery included requests for production of documents, interrogatories, and requests for admission, and the June 16, 2014, discovery included a second set of requests for production of documents. (*See* Doc. 13-1, p.

7; p. 26.) After several informal discovery dispute conferences and a formal hearing on February 11, 2015, the parties informed the Court in March 2015 that they were unable to resolve the last of their discovery disputes, which includes providing documents and communications after a mediation and settlement in a related state-court case.

The parties were ordered to file a joint statement setting forth their arguments as to the remaining issue by no later than March 10, 2015. On March 19, 2015, having reviewed the parties' joint statement, the Court determined a hearing was unnecessary and indicated a written order would follow. For the reasons set forth below, Plaintiffs are ORDERED to produce the disputed discovery documents.

## II.    FACTUAL BACKGROUND

**A.    Related State-Court Litigation**

This suit stems from a dispute between siblings, Jack and Sona Vartanian ("Jack" and "Sona," respectively). Jack owned and operated a boat dealership. In 2007, Jack apparently gave Sona a power of attorney so that she could operate Jack's business while he was serving a prison sentence for income tax evasion. In 2008, while her brother was incarcerated, Sona and her company, Pacific Marine, purchased Jack's boat dealership, including its inventory, with Sona signing the purchase agreement as both the purchaser and as the seller on behalf of Jack pursuant to the power of attorney. After his release from prison, Jack repossessed the inventory of boats held by Sona and her business in July 2010. Jack claimed Sona had not been authorized to sign the sales agreement on his behalf in 2008 and that Sona was only operating the dealership only as a caretaker. Sona and Pacific Marine filed suit against Jack in Fresno County Superior Court in an action captioned *Vartanian v. Vartanian*, Case No. CG03180.

The parties to that suit engaged in mediation before retired Judge Howard Broadman which resulted in a settlement agreement executed by both Sona and Jack on November 10, 2010. As part of the settlement agreement, Sona and Jack were to provide any financial records requested by the other party and those documents would in turn be provided to each party's accountant. The accountants would "cooperate to reconcile all expenses and income in connection with the two parties and their respective boat business from 2007 to present." (Doc. 34-1, p. 8.)

The settlement agreement provided that, "[i]n the event the accountants cannot reach agreement on such reconciliation, Judge Broadman shall review the information submitted to him and make a determination regarding the reconciliation. Judge Broadman's decision shall be final and may be entered as a judgment. Judge Broadman will retain jurisdiction to resolve all disputed matters between the parties." (Doc. 34-1, p. 8.)  The accountants were unable to complete the financial reconciliation, and the issue was presented to Judge Broadman in April 2011 in a recorded and transcribed proceeding. Jack and Sona ultimately abandoned the November 2010 settlement agreement, and neither side sought to enforce whatever decision Judge Broadman ultimately made about the financial reconciliation. After multiple continuances to complete the contractual arbitration agreed to in the November 2010 settlement, the *Vartanian v. Vartanian* matter proceeded to trial in April and May 2014.

Meanwhile, on March 24, 2011, Sona and Pacific Marine submitted a claim to their insurer, Philadelphia, alleging that Jack's repossession of the boat inventory constituted a "theft" under the terms of the policy. Philadelphia denied the claim, and Sona and Pacific Marine filed suit against Philadelphia in Madera County Superior Court on May 8, 2013, for breach of contract and breach of the implied covenant of good faith and fair dealing, among other claims. The suit was removed to this Court on June 27, 2013.

**B.      Procedural Background**

The parties notified the Court of a discovery dispute in a joint status report one week prior to a pre-scheduled mid-discovery status conference, which was held on September 23, 2014. (Docs. 13, 14.) The history of this lengthy dispute is set forth below.

**1.      Discovery Propounded to Plaintiffs in March and June 2014**

In March 2014, Philadelphia propounded on Plaintiffs a request for production of documents ("RFP, set one"), requests for admissions, and interrogatories (collectively "March 2014 discovery"). (Doc. 13-1, p. 7.) On June 6, 2014, Plaintiffs responded to the March 2014 discovery – responses that consisted mostly of objections. (Doc. 13-1, p. 9-13.) Meet and confer letters were exchanged (Doc. 13-1, p. 15-18, 20-21), and Plaintiffs promised to provide additional responses.

3

On June 16, 2014, Philadelphia propounded on Plaintiffs a second set of requests for production ("June 2014 RFPs"). Plaintiffs and Philadelphia held a discovery conference on June 30, 2014, and Plaintiffs again promised to provide further responses to the March 2014 discovery. (Doc. 13-2, p. 3.) On July 21, 2014, Plaintiffs responded to only two of the June 2014 RFPs, and those responses consisted only of an objection that the requests were too burdensome because they required production in Los Angeles. The responses stated that Plaintiffs *would* produce documents either locally or by making the documents available for inspection or copying near Plaintiffs' counsel's Fresno office. (Doc. 13-1, p. 28-31.)

Days later, Philadelphia's counsel was notified that Plaintiffs had retained substitute counsel. (Doc. 13, p. 7.) On July 31, 2014, Philadelphia's counsel contacted Plaintiffs' new counsel to determine when the promised production of the March 2014 discovery and June 2014 RFP responses would be made. After multiple meet and confer letters to Plaintiffs' counsel (*see* Doc. 13-2, Exhibits 8-9), the parties' counsel spoke telephonically on August 27, 2014. (Doc. 13-2, Exhibit 10, p. 20.) Counsel continued to send meet and confer letters regarding the outstanding discovery and spoke telephonically again on September 9, 2014. (Doc. 13-2, p. 24, 22, 29.) On September 15, 2014, Plaintiffs provided supplemental responses to the March 2014 discovery, which Philadelphia found insufficient. (Doc. 13, p. 7.)

On September 16, 2015, the parties filed a joint statement regarding their discovery dispute. (Doc. 13.) An informal mid-discovery status conference was held and the parties' extensive discovery disputes regarding the March and June 2014 discovery requests were discussed. Due to Plaintiffs' substitution of counsel, Plaintiffs' piecemeal responses to discovery, and because Plaintiffs served more supplemental discovery responses only **one** day before the mid-discovery status conference which Philadelphia had not yet had the opportunity to fully review, the Court ordered Philadelphia to review Plaintiffs' production and set forth in a letter to Plaintiffs a list of the discovery requests that had not been responded to by Plaintiffs, which included the June 2014 RFPs. (Doc. 15.)

**2.  Dispute Regarding June 2014 RFP No. 16**

Pursuant to the Court's order (Doc. 15), on September 29, 2014, Philadelphia sent an informal letter to Plaintiffs setting forth 17 RFPs to which Plaintiffs had still not responded, which included RFP No. 16 that was originally propounded in the June 2014 RFPs. Philadelphia restated the following document request:

> 16.  ALL DOCUMENTS constituting or evidencing COMMUNICATIONS from Hagop[1] Vartanian, his employees, representatives, attorneys or agents, to Sona Vartanian, her employees, representatives, attorneys or agents, discussing, mentioning or referencing the settlement agreement entered into on or about November 10, 2010, or the exchange of information or accounting documents in connection with any such agreement.

(Doc. 23-1, p. 18-19.)  On October 13, 2014, Plaintiffs responded to Philadelphia with a letter setting forth objections to the September 2014 discovery requests:

> Response:  Objection.  Plaintiffs deny that they entered an enforceable settlement agreement on or about November 10, 2010.  The parties in **Vartanian v. Vartanian** went to trial in Fresno Superior Court after agreeing that the document was not enforceable and would not be enforced.

(Doc. 23-1, p. 18-19.)

On October 15, 2014, Philadelphia responded to Plaintiffs' objection and indicated that the "objection" did not constitute grounds for refusing to produce the requested documents.

On October 24, 2014, Plaintiffs responded to Philadelphia's October 15, 2014, letter:

> Response:  We have already objected to this request.  As stated previously: Objection.  Plaintiffs deny that they entered an enforceable settlement agreement on or about November 10, 2010.  The parties in **Vartanian v. Vartanian** went to trial in Fresno Superior Court after agreeing that any purported settlement agreement was not enforceable and would not be enforced.  I note further that under California law documents and statements made and the process occurring at mediation are not admissible in evidence.  Your request is therefore improper.

(Doc.23-1, p. 19.)  In November 2014, the parties again submitted informal letter briefs to the Court regarding this discovery dispute. (Docs. 19, 20.) A follow-up informal conference was held on November 26, 2014.  As it related to RFP No. 16, Plaintiffs were ordered to supplement their responses and were informed that if the response included an objection based upon a privilege, a

---

[1] Hagop Vartanian is also known as "Jack" Vartanian.

privilege log was to be provided to Philadelphia by no later than December 12, 2014. The parties were ordered to meet and confer regarding the supplemental response, and if disputes remained, they were to submit a joint status report to the Court outlining their respective positions. (Doc. 22, ¶ 6.) A follow-up conference was set for January 22, 2015.

On December 12, 2014, Plaintiffs served a Privilege Log regarding documents responsive to RFP No. 16, and on December 26, 2014, provided the following supplemental response to RFP No. 16 and refused to produce any documents pursuant to RFP No. 16:

> Responding Party incorporates by reference each of the reservation of rights and each of the objections set forth in the Preliminary Statement above.
>
> Objection is made to this request in that it seeks evidence of communications and/or writings made in the course of and pursuant to a mediation and mediation consultation. The request thus seeks to violate the confidentiality provided by Rule 408 of the *Federal Rules of Evidence* and *California Evidence Code* Section 1119. A privilege log has been provided to defendant.
>
> In the process of the subject mediation, a report was prepared by accountant Howard Gastwirth, and a copy of that report was subsequently used and produced in State Court action, *Vartanian v. Vartianian*, Fresno County Superior Court Case No. 10 CECG03180. Defendant has a copy of that report in its possession.

(Doc. 23-1, p. 19.)

On January 10, 2015, Plaintiffs made *another* supplemental production of documents and provided a supplemental Privilege Log as it pertained to RFP. No. 16. In total, the Privilege Log, with the January supplementation, identified 42 items that Plaintiffs claimed were privileged under California Evidence Code ("CEC") § 1119 and inadmissible under Federal Rule of Evidence 408.

**3. February 2015 Hearing Regarding Remaining Disputes**

On January 15, 2015, Philadelphia filed a motion to compel, setting a hearing for January 22, 2015. The motion included a joint statement from the parties regarding their discovery dispute. Upon review of Philadelphia's motion to compel, the Court converted the informal conference set for January 22, 2015, to a formal hearing on February 11, 2015. (Doc. 24.)

Plaintiffs then filed an opposition brief on January 28, 2015, and Philadelphia filed a reply brief on February 5, 2015. A hearing was held on February 11, 2015, and an order requiring further production was issued on February 12, 2015. Regarding RFP No. 16 and item Nos. 1

through 42 in the Privilege Log, the Court determined that Plaintiffs' assertion of the mediation privilege under CEC Section 1119 was too broad. At the hearing, the Court explained it was Plaintiffs' burden to establish that the post-mediation communications identified in the Privilege Log were not subject to production under the mediation privilege. To meet this burden, Plaintiffs were required to show a nexus between the mediation itself and the post-mediation/post-settlement communications. The mere fact that communications after the November 2010 mediation and settlement would not have been made *but for* the mediation and settlement is not enough, standing alone, to establish the communications were made pursuant to the mediation and therefore privileged.

> For example, emails identified in the privilege log discuss underlying vehicle sales and title certificates. To the extent those documents were *not* created expressly for the purposes of mediation and would otherwise be discoverable, they SHALL be produced to Defendant by no later than February 20, 2015. As noted at the hearing, any continued assertion of the privilege by Plaintiffs, particularly as it relates to bank documents or vehicle titles exchanged by the state court parties following mediation, must establish a link between the materials asserted to be privileged and what occurred at the mediation.

(Doc. 28, 2:8-13.) The parties were directed to meet and confer once again and contact chambers if they had any remaining disputes following the production Plaintiffs were ordered to perform.

The parties filed a joint statement on March 10, 2015, indicating their only remaining dispute was the production of some of the communications identified in the Privilege Log. Specifically, the parties dispute whether production is required of Privilege Log Nos. 1-10; 12-17; 20-23; 28-29; 30-33; 35-37; and 40-42.

### III. DISCUSSION

**A.   The Parties' Remaining Dispute**

The parties' remaining dispute is narrow and pertains to whether the communications identified in the Privilege Log served by Plaintiffs in response to RFP No. 16 are covered by the mediation confidentiality provision of CEC § 1119. The Privilege Log communications are grouped as follows, according to Plaintiffs' characterizations of the communications:

- **Privilege Log Nos. 1 through 10** include letters and emails between Sona and Jack's counsel regarding difficulties with the settlement after mediation and discussions of

7

1  attempts to complete the settlement (Doc. 34-1, p. 2-3);

2  - **Privilege Log Nos. 12 through 17** include communications between Sona and Jack's
3  counsel and Judge Broadman regarding attempts to "complete" the settlement (Doc. 34-1,
4  p. 3);

5  - **Privilege Log Nos. 20 through 22** include emails and letters between Sona and Jack's
6  counsel regarding attempts to exchange files (Doc. 34-1, p. 3);

7  - **Privilege Log Nos. 28-29** include a letter and an email between Sona and Jack's counsel as
8  well as Judge Broadman regarding the status of the settlement, a change of counsel, and
9  conference call arrangements (Doc. 34-1, p. 4);

10 - **Privilege Log Nos. 30-33** include an April 2011 audio file of a proceeding before Judge
11 Broadman, and letters from Jack and Sona's counsel to Judge Broadman regarding issues at
12 an upcoming proceeding before Judge Broadman (Doc. 34-1, p. 4.)

13 - **Privilege Log Nos. 35-37** include letters from counsel to Judge Broadman regarding
14 problems with the settlement agreement; and

15 - **Privilege Log Nos. 40-42** include letters between counsel regarding issues and problems
16 with the settlement and a transcript of a hearing before Judge Broadman (Doc. 34-1, p. 5).

17 As to Privilege Log Nos. 30-33, 35-37, and 40-42, Plaintiffs' counsel characterizes several
18 communications as referencing a "mediation hearing" before Judge Broadman.  In the joint
19 statement filed January 15, 2015, Philadelphia argued that although Plaintiffs' counsel
20 characterized the April 2011 proceedings as a "mediation" proceeding before Judge Broadman,
21 Sona's counsel's billing records describe that proceeding as an arbitration hearing in Visalia. (Doc.
22 23-1, 21:10-14; Exhibit 12.)  Philadelphia's assertion is logical in view of documents Jack and
23 Sona filed on the state court's docket, including a notice of settlement in November 2010, as well
24 as court-issued docket notations that the parties were still awaiting arbitration in September 2011
25 and also had stipulated in March 2012 to continue a case-status review proceeding until July 2012
26 due to pending arbitration proceedings. Plaintiffs responded that these communications are simply
27 references "to the part of the void settlement agreement which agrees to give Judge Broadman the
28 authority to enforce the agreement.  This is all part and parcel of the medi[ation] process and

8

plaintiffs assert the privilege applies." (Doc. 23-1, 27:22-25.) Plaintiffs did not dispute that the proceeding before Judge Broadman in April 2011 was a contractual arbitration proceeding under the terms of the parties' November 2010 settlement agreement.

It is this discovery dispute regarding Plaintiffs' Privilege Log and responses to RFP No. 16 that is now pending before the Court.

**B.     Applicable Law**

    **1.     Mediation Confidentiality Pursuant to California Evidence Code**

California Evidence Code Section 1119 provides the following:

> (a) No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.
>
> (b) No writing, as defined in Section 250, that is prepared for the purpose of, in the course of, or pursuant to, a mediation or mediation consultation, is admissible or subject to discovery, and disclosure of the writing shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.
>
> (c) All communications, negotiations, or settlement discussions by and between parties in the course of a mediation or a mediation consultation shall remain confidential.

Although not recognized as a privilege per se, California statutes protect the confidentiality of mediation negotiations and related oral and written materials. Cal. Evid. Code § 1119. The purpose of the confidentiality provision is to protect against disclosure of oral and written communications made during mediation. It is meant to promote "confidence and trust among participants." *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1176 (C.D. Cal. 1998).

In conjunction with Section 1119, CEC Section 1126 provides that "[a]nything said, any admission made, or any writing that is inadmissible, protected from disclosure, and confidential under this chapter *before a mediation ends*, shall remain inadmissible, protected from disclosure, and confidential to the same extent after mediation ends.") (emphasis added). CEC § 1125 sets

9

forth the events that end a mediation for purposes of confidentiality:

> (a) For purposes of confidentiality under this chapter, a mediation ends when any one of the following conditions is satisfied:
>
>> (1) The parties execute a written settlement agreement that fully resolves the dispute.
>>
>> (2) An oral agreement that fully resolves the disputes is reached in accordance with Section 1118.
>>
>> (3) The mediator provides the mediation participants with a writing signed by the mediator that states that the mediation is terminated, or words to that effect, which shall be consistent with Section 1121.
>>
>> (4) A party provides the mediator and the other mediation participants with a writing stating that the mediation is terminated, or words to that effect, which shall be consistent with Section 1121 . . . .
>>
>> (5) For 10 calendar days, there is no communication between the mediator and any of the parties to the mediation relating to the dispute. The mediator and the parties may shorten or extend this time by agreement.
>
> (b) For purposes of confidentiality under this chapter, if a mediator partially resolves a dispute, mediation ends when either of the following conditions is satisfied:
>
>> (1) The parties execute a written settlement agreement that partially resolves the dispute.
>>
>> (2) An oral agreement that partially resolves the dispute is reached in accordance with Section 1118.
>
> (c) This section does not preclude a party from ending a mediation without reaching an agreement. This section does not otherwise affect the extent to which a party may terminate a mediation.

**2.   Federal Rule of Evidence 408**

Federal Rule of Evidence 408 provides the following with regard to admissibility of settlement negotiations:

> (a) Prohibited Uses. Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach a prior inconsistent statement or a contradiction:
>
>> (1) furnishing, promising, or offering – or accepting, promising to accept, or

10

>     offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and
>
>     (2) conduct or a statement made during compromise negotiations about the claim . . .

### C. California Mediation Confidentiality Governs the Scope of the Privilege Asserted

Pursuant to Federal Rule of Evidence 501, in civil cases, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Because the Court exercises its diversity jurisdiction to apply California substantive law regarding Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing, Rule 501 requires application of CEC Section 1119. *Milhouse v. Travelers Com. Ins. Co.*, 982 F. Supp. 2d 1088, 1105 n.10 (C.D. Cal. 2013 (noting California mediation privilege applies in diversity case, but explaining there is an exception when the documents to which the privilege applies are going to be offered for a purpose *other* than to prove a claim or defense); *see also Gonzalez v. T-Mobile, USA, Inc.,* No. 13-cv-1029-BEN (BLM), 2014 WL 4055365, at *4 (S.D. Cal. Aug. 14, 2014) (citing *Cal. Pub. Utilities Com'n*, 892 F.2d 778, 781 (9th Cir. 1989) ("In diversity actions, questions of privilege are controlled by state law.")).

### D. Plaintiffs Have Failed to Show Withheld Communications Are Confidential Under Section 1119

#### 1. Plaintiffs' Contentions

Plaintiffs contend the documents sought by Philadelphia are not discoverable under the confidentiality provision of CEC Section 1119. Although the communications sought by Philadelphia occurred after the November 2010 mediation and settlement agreement, Plaintiffs maintain those communications were related to and arose "pursuant to" the mediation. Citing *Wimsatt v. Superior Court*, 152 Cal. App. 4th 137 (2007) and *Lappe v. Superior Court*, 232 Cal. App. 4th 774 (2014), Plaintiffs contend that mediation confidentiality is to be applied whether the writing or statement would not have existed *but for* a mediation communication, negotiation, or settlement discussion. According to Plaintiffs, none of the post-mediation communications regarding financial reconciliation identified in the Privilege Log would have occurred but-for the

11

mediation.

Further, the non-confidentiality provision in the November 2010 settlement agreement does not state that other documents relating to the mediation are not confidential, but only that the settlement agreement itself may be deemed non-confidential for enforcement purposes. The non-confidentiality clause in the settlement agreement only applied to proceedings to enforce the settlement agreement – the waiver was not "as to any and every aspect of the mediation." (Doc. 34, 3:28-4:2.) Plaintiffs cite *Simmons v. Ghaderi,* 44 Cal. 4th 570 (2008) for the proposition that any waiver of the mediation privilege must be express and not implied by conduct. Moreover, Plaintiffs note that since Sona and Jack repudiated the settlement agreement in the underlying case, the non-confidentiality clause is not operative in any event.

**2.   Philadelphia's Contentions**

Philadelphia contends that once the settlement agreement was signed by the parties in November 2010, the mediation terminated pursuant to CEC 1125. The settlement agreement completely resolved the dispute between Sona and Jack, and thus any mediation privilege terminated as to the communications after the agreement was signed. Philadelphia contends the post-mediation communications it seeks are relevant to the relationship between Sona and Jack and may also be relevant for credibility purposes. Specifically, witnesses for Sona contend the moving of inventory next door by Jack was a "theft" rather than an ongoing family dispute about their respective interests in the boat dealership. Philadelphia contends that conversations between Sona and Jack's counsel regarding the boat inventory for purposes of the settlement agreement may be relevant to the issue of whether there was a theft or an ongoing family dispute. Even to the extent Federal Rule of Evidence 408 would render the Privilege Log communications inadmissible for purposes of liability or damages, it may still be offered for other purposes such as proving bias or prejudice of a witness.

**3.   Discussion**

Rule 26(b) of the Federal Rules of Civil Procedure establishes the scope of discovery and provides in pertinent part that any non-privileged material "that is relevant to any party's claim or defense" is within the scope of discovery. Fed. R. Civ. P. 26(b). "The party who resists discovery

has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998).

"Mediation confidentiality protects communications and writings if they are materially related to, and foster, the mediation." *Wimsatt,* 152 Cal. App. 4th at 160.  To establish whether a communication is protected by mediation confidentiality, the timing, context, and content of the communication must be considered.  *Id.*  "Mediation confidentiality is to be applied where the writing, or statement would not have existed but for a mediation communication, negotiation, or settlement discussion."  *Id.*

Here, the mere fact that Sona and Jack's counsel communicated about trading financial documents pursuant to the settlement agreement or communicated with Judge Broadman about the settlement agreement more than a month after the mediation and settlement is not sufficient to show these communications were confidential under CEC 1119 or were made "pursuant to" mediation.

In *Long Beach Memorial Medical Center v. Superior Court*, the court determined post-mediation settlement discussions were not subject to the confidentiality provision of CEC Section 1119.  172 Cal. App. 4th 865, 875 (2009).  This case involved a medical negligence action filed by a minor patient by and through her guardian ad litem (the "plaintiffs") against physicians, a hospital, and hospital staff.  After two unsuccessful mediations, a subsequent settlement agreement was made between the plaintiffs, the hospital, and a defendant nurse's employer.  Days after this settlement, however, two defendant physicians − who discovered they were not included in the terms of the hospital's settlement with the plaintiffs − offered the plaintiffs $200,000 "as separate, additional, new money" in return for dismissal of the suit against them.  *Id.* at 871.  The defendant physicians then sought a good faith determination of their settlement agreement with the plaintiffs, which would prevent the hospital from seeking contribution from the defendant physicians.  The question on appeal was whether the trial court abused its discretion in finding the defendant physicians' settlement with the plaintiffs was made in good faith.  The court considered evidence and testimony between the parties following the mediation sessions.  It concluded that while the

13

mediation confidentiality statute precluded the introduction of evidence or testimony from the mediations, "the record of negotiations conducted after the mediation concluded indicates here that the physicians' settlement with the plaintiffs was designed to benefit the physicians at the expense of the interests of the hospital and (the defendant nurse's employer)." Although the communications considered by the court in *Long Beach Memorial Medical Center* would not have occurred but-for the prior mediations, that did not *automatically* extend the scope of the mediation confidentiality under CEC Section 1119. The same is true of the post-mediation communications in this case – the mere fact these communications arose as a result of the mediation and settlement does not mean they were made "pursuant to" the mediation and are thus confidential.

Further, the mediation in this case terminated pursuant to CEC Section 1125 upon execution of the settlement agreement. The settlement agreement fully resolved the dispute between Jack and Sona even though a financial reconciliation was to be completed after settlement by the parties' accountants. The settlement agreement provided for a method to resolve any disputes about the financial reconciliation by requiring further proceedings before Judge Broadman to finally decide the dispute. Although the parties to the settlement agreement apparently never sought to enforce it and apparently abandoned it, Plaintiffs present no argument why the limitation to the scope of the confidentiality provision of CEC 1125 does not apply to the post-mediation communications at issue here. Plaintiffs' contention that the settlement agreement was unenforceable is a legal conclusion. Plaintiffs offer no argument why it was unenforceable, or that the parties formally agreed to rescind the agreement, or that a court found the agreement to be unenforceable.

Beyond the temporal-scope limitations to the mediation confidentiality set forth in Section 1125, Plaintiffs have failed to establish the necessary nexus between the post-mediation communications sought by Philadelphia and the confidential communications during the course of the mediation. As the Court explained at the hearing on February 11, 2015, the mere fact that Jack and Sona's counsel corresponded by email more than *a month after* the mediation and settlement agreement does not mean the communications were necessarily made pursuant to the mediation. Plaintiffs were instructed at the February 2015 hearing that any refusal to produce these

communications must be accompanied by an explanation of the context and general content of the communications that *specifically* linked the communications to the mediation session. *Wimsatt v. Super Ct.*, 152 Cal. App. 4th at 160-61. Other than asserting the emails and letters would not have been composed and sent but for the mediation – presumably because the parties would not have reached a settlement agreement absent the mediation or agreed to produce financial records – Plaintiffs have failed to meet their burden of establishing the existence of a privilege under CEC Section 1119. Despite numerous instructions to do so, Plaintiffs have not made the necessary link between the post-mediation/post-settlement communications and the mediation itself other than a sweeping generalization that the communications arose pursuant to the mediation.

In *Wimsatt*, the plaintiff ("Kausch") in a legal malpractice action against the law firm of Magana, Cathcart & McCarthy and its attorney William H. Wimsatt (collectively "Magana") alleged among other things that Magana breached its fiduciary duty to Kausch by submitting an unauthorized settlement demand to the opposing party during the course of an underlying personal injury case in which Magana represented Kausch. 152 Cal. App. 4th at 142. Kausch learned of the potentially unauthorized act from a "confidential mediation brief" submitted to a mediator in the underlying personal injury lawsuit. *Id.* This mediation session was held in January 2006 and the case did not settle; another mediation was scheduled for April 2006. The defense counsel ("Brotzen") prepared a confidential mediation brief for the second mediation which included a statement that Kausch's counsel had purportedly communicated a settlement demand in the amount of $1.5 million. *Id.* at 143. A second lawyer for Kausch ("Goldstein") responded to Brotzen's mediation brief through email and stated that the $1.5 million dollar settlement demand had not been made to Goldstein's knowledge. Brotzen responded to Goldstein via email stating that he had heard that demand from Wimsatt who made the remark during a telephone conference with Brotzen. Goldstein asked Wimsatt about the demand, and Wimsatt responded that he did have a discussion with Brotzen about a month earlier, but he did not make a demand. Wimsatt stated he told Brotzen he had re-evaluated damages and thought a demand for half of Kausch's original demand was more in order, but he also told Brotzen that he, Wimsatt, had no authority to reduce the original demand. The second mediation followed a day after this email exchange

between Wimsatt and Goldstein, and the underlying case settled.

A few months later, Kausch filed a malpractice action against Magana alleging that Magana had lowered the settlement demand by more than one half and impaired Kausch's ability to achieve the desired result in mediation – which concluded with a settlement much less than he would have received had Magana not reduced his settlement demand. At deposition in the malpractice action, Wimsett repeatedly denied that he ever lowered the settlement demand and he objected to all questions relating to the mediations based upon mediation confidentiality. Kausch's attorney informed Wimsatt that he intended to depose Brotzen on the conversation prior to the second mediation wherein Kausch's settlement demand was reduced to $1.5 million. Magana moved the court for a protective order to prevent Kausch from obtaining this and other discovery arguing that, in relevant part, the conversation between Wimsatt and Brotzen in which Wimsatt allegedly lowered the settlement demand on the eve of mediation was covered by the mediation privilege. The trial court denied the protective order and refused to seal the discovery documents pursuant to the mediation privilege. Magana filed a petition for writ of mandate.

The appellate court determined the mediation privilege was not established as it related to the telephone conversation between Wimsatt and Brotzen the month before the second mediation:

> Magana has not shown that the purported conversation was made for the purpose of, or pursuant to, the mediation. Rather, there is evidence that it was made during a telephone call "scheduling the expert depos and touching on whether a second mediation conf[erence] would be worthwhile." This evidence suggests the conversation occurred during a "discovery conversation. . . and the statement could have been made, even if there was to be no mediation. If so, the statements were communications, negotiations, and settlements made in the regular course of the litigation, not for the purpose of, in the course of, or pursuant to a mediation."

The same reasoning is analogously applicable here. The post-settlement emails and letter conversations regarding the parties' positions with respect to the financial reconciliation were conducted more than a month after the mediation terminated and the settlement agreement was signed, just as Brotzen and Wimsatt's conversation occurred over *a month* before the second mediation. The financial reconciliation discussions here do not appear different from those the parties would generally have engaged in when setting forth their arguments about the financial evidence during the course of litigation – indeed they contemplated disputes over this financial

16

reconciliation. These conversations relate to completing the financial reconciliation portion of the settlement agreement and are not negotiations during the course of or pursuant to a mediation.[2]

Moreover, the Court notes Plaintiffs' *significant delay* in asserting the mediation privilege and providing a privilege log. Pursuant to Federal Rule of Civil Procedure 34, a party has 30 days to respond to a request for production that either states that inspection and related activities will be permitted as requested or state an objection, including the reasons. Fed. R. Civ. P. 34(b)(2)(A)-(B). Under Rule 26(b)(5)(A), when claiming a privilege, a party must expressly make the claim and then describe the nature of the documents, communications, or other tangible things not produced or disclosed without revealing the information itself but yet enabling the other party to assess the privilege claim. Fed. R. Civ. P. 26(b)(5)(A).

In *Burlington Northern & Santa Fe Ry. Co. v. United States*, 408 F.3d 1142, 1149 (9th Cir. 2005), the court analyzed the notice requirement under Rule 26(b)(5) in conjunction with Rule 34's 30-day deadline. The court held that inserting a "boilerplate" objection into a response is insufficient, but with regard to privilege objections within the 30-day period, the court rejected a *per se* rule that would deem a privilege automatically waived if not asserted within the 30-day period. The court clarified that detailed objections within a privilege log provided outside the 30-day limit may be sufficient, depending on various factors weighed as part of a "holistic" case-by-case analysis. *Burlington Northern*, 408 F.3d at 1149-50. The factors to be considered include the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether the withheld documents are privileged; the timeliness of the objection and the accompanying information about the withheld documents; and the magnitude of the document production and other particular circumstances that make responding to discovery unusually easy or unusually difficult.

As it pertains to RFP No. 16, the original document request was served by Philadelphia in June 2014. No response to RFP No. 16 was made within 30 days of that request, and no objection

---

[2] With respect to Federal Rule of Evidence 408, even to the extent the evidence arose out of a settlement negotiation, Philadelphia maintains the evidence may be admissible for a purpose other than liability or damages. This is sufficient for purposes of discovery, but nothing in this order should be construed as a decision as to the *admissibility* of any evidence under Federal Rule of Evidence 408.

17

was stated. In September 2014, the Court ordered Philadelphia to review and determine what discovery requests were still outstanding and to reassert any requests for production that had not been properly responded to by Plaintiffs. Thus, on September 29, 2014, Philadelphia re-asserted RFP No. 16. Plaintiffs' response on October 13, 2014, stated only an unspecified "objection" and then stated Plaintiffs denied they entered into an enforceable settlement agreement on November 10, 2010. This was not an assertion of the mediation privilege under CEC Section 1119. Even if it were, it identified no documents withheld pursuant to a privilege. When the parties appeared again for an informal conference in November 2014, Plaintiffs argued the documents were privileged under CEC Section 1119. The Court required Plaintiff to produce documents pursuant to RFP. No. 16 and indicated that if Plaintiff had a privilege objection, it was to be made specifically and accompanied by a privilege log by no later than December 12, 2014. The privilege log was provided on December 12, 2014, but it was later supplemented – out of compliance with the Court's November 26, 2014, order – in January 2015 with communications Plaintiffs' counsel belatedly uncovered.

At the hearing in February 2015, the Court explained that because the description of the documents in the Privilege Log did not provide any link between the disputed post-mediation/post-settlement communications and confidential communications at the mediation itself, Plaintiffs had not adequately established the withheld communications were covered by the privilege. The parties were ordered to meet and confer again and Plaintiffs were instructed that any reassertion of the privilege with regard to these documents must describe the link between the communications and the mediation itself beyond just a temporal relationship. Plaintiffs were unable to articulate a sufficient link in their joint statement filed on March 9, 2015; rather, they simply reasserted that, but for the mediation and settlement, the parties would not have been discussing the financial reconciliation and thus those post-settlement communications were made "pursuant to" the mediation.

Conversations about financial-reconciliation evidence post-settlement that were subject to contractual arbitration appear attenuated from confidential communications made during the mediation itself. As the financial reconciliation was not completed at the mediation, and the

parties had not yet traded all documentation regarding the reconciliation, what connection post-settlement discussions about that financial reconciliation had to confidential mediation communications is not obvious on the face of the Privilege Log descriptions.  Moreover, the fact that the mediation had terminated pursuant to CEC Section 1125 after the settlement agreement was signed creates another hurdle to establishing a nexus between post-settlement communications and the mediation for purposes of confidentiality.  Finally, Plaintiffs have not established that the November 2010 settlement agreement was unenforceable; rather, it appears the settlement was simply abandoned by the parties.

Privilege Log Nos. 30-33, 35-37, 40-42 refer to communications about a "mediation" in April 2011 before Judge Broadman, but Philadelphia has established, pursuant to state court records and attorney billing records, that what took place before Judge Broadman in April 2011 was a contractual arbitration proceeding pursuant to the parties' November 2010 settlement agreement.  Plaintiffs have not rebutted this evidence or offered another explanation as to why this proceeding was described as a "mediation" proceeding in the Privilege Log − Plaintiffs simply reassert that this series of communications arose out of the settlement agreement that provided for a financial reconciliation proceeding before Judge Broadman and thus these communications all arose out of the mediation where the settlement was formed.

Finally, in light of the factors identified by *Burlington Northern*, the Court has given Plaintiffs *significant* latitude to assert a mediation privilege in the first place and the record is sufficient to permit the Court to find the privilege waived.  The initial RFP was propounded in June 2014 and a privilege log was not served on Philadelphia until December 2014, and then supplemented without explanation in January 2015.  Not only was the mediation privilege not asserted until November 2014, nearly 5 months after the initial RFP was served, but a *complete* privilege log was not served until January 2015 − out of compliance with the Court's order.  Additionally, the Court has offered Plaintiffs *repeated* opportunities both in briefing and at the February 2015 hearing (as well as in two informal conferences in September and November 2014) to establish a link between the post-settlement communications about financial reconciliation and the mediation itself, but Plaintiffs have been unable to set forth a sufficient nexus.  In sum, the

Court has provided Plaintiffs abundant opportunities to meet their burden to establish the mediation privilege applies to the withheld communications, and they have failed to do so.

For these reasons, the disputed communications in Privilege Log Nos. 1-10; 12-17; 20-22; 28-29; 31-33; 35-37; and 40-42 shall be produced by Plaintiffs; Privilege Log No. 30 shall NOT be produced. Out of an abundance of caution, Plaintiffs may redact from these communications any statement that *directly* implicates a confidential communication made during the November 2010 mediation – to the extent any such statement exists. The audio tape of the arbitration proceeding before Judge Broadman in April 2011 shall NOT be produced as a transcript of this proceeding is listed at Privilege Log No. 42, and the audio tape is repetitive of that transcript. Moreover, the transcript is easily redactable while the audio recording is not.

### IV.  CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Within 10 days of the date of this order, Plaintiffs shall produce the disputed communications identified in the Privilege Log Nos. 1-10; 12-17; 20-22; 28-29; 31-33; 35-37, and 40-42;

2. Plaintiffs may redact from these documents any communication that **directly** implicates a confidential communication that was made during the November 2010 mediation; and

3. Privilege Log No. 30 shall NOT be produced as it is duplicative of Privilege Log No. 42.

IT IS SO ORDERED.

Dated:   **April 7, 2015**                         /s/ Sheila K. Oberto
                                         UNITED STATES MAGISTRATE JUDGE