1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 | PACIFIC MARINE CENTER, INC., a          No.  1:13-CV-00992-DAD-SKO
   | California corporation, and SONA
12 | VARTANIAN, an individual,

13               Plaintiffs,                ORDER DENYING PLAINTIFFS'  MOTION
                                            FOR SUMMARY JUDGMENT, GRANTING
14         v.                               IN PART AND DENYING IN PART
                                            DEFENDANT'S MOTION FOR SUMMARY
15 | PHILADELPHIA INDEMNITY                  JUDGMENT, AND DISMISSING CROSS
   | INSURANCE COMPANY, a Pennsylvania       MOTIONS TO STRIKE AS MOOT
16 | corporation, and DOES 1 through 10,
   | inclusive,                             (Doc. Nos. 76, 84, 108, 122)
17
                 Defendants.
18

19

20         This matter came before the court on March 1, 2016, for hearing on the parties' cross-

21  motions for summary judgment.  Attorneys Jeff Reich and Shane Reich appeared on behalf of the

22  plaintiffs and attorney Bruce Smyth appeared on behalf of the defendant.[1]  Oral argument was

23
   _____

24  [1]  The caption of this case indicates there are multiple defendants, particularly up to ten additional
    defendants captioned as "Does."  As a general rule, the use of "Doe" defendants is not favored in
25  federal court.  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  However, plaintiffs
    "should be given an opportunity through discovery to identify the unknown defendants."  *Id.*
26  Plaintiffs here have identified no further defendants, and discovery in this action is now closed.
    Since "[t]he court has the authority to dismiss the Doe defendants *sua sponte*," *Urias v. Quiroz*,
27  895 Supp. 262, 264 (S.D. Cal. 1995), the court will do so here.  Accordingly, the Doe defendants
    are hereby dismissed.
28

                                          1

1   heard and plaintiffs' motion was taken under submission.  For the reasons set forth below,

2   plaintiffs' motion for summary judgment will be denied, defendant's motion for summary

3   judgment will be granted in part and denied in part and the parties' motions to strike portions of

4   each other's respective statements of facts will be denied as moot.

5   **I.     Background**

6        In short, this action involves an insurance claim for a purported theft occurring at

7   plaintiffs' business, which was engaged in the business of buying and selling boats and

8   accessories.  In the operative complaint plaintiffs Pacific Marine Center Inc. ("Pacific Marine")

9   and Sona Vartanian ("Sona"), who are the named insured and the president/sole shareholder of

10  that business, respectively, have alleged breach of contract and related breach of an implied

11  covenant of good faith and fair dealing against defendant Philadelphia Indemnity Insurance

12  Company ("Philadelphia").  (Doc. No. 1 at 8–12.)  Both plaintiffs and defendant filed motions for

13  summary judgment.  (Doc. Nos. 76, 84.)  Both subsequently filed oppositions to the other's

14  motion for summary judgment, as well as motions to strike portions of each other's respective

15  statements of facts.  (*See* Doc. Nos. 104, 108, 116, and 122.)

16       Pacific Marine is solely owned by Sona Vartanian.  It was the named insured on an

17  insurance policy agreed to by defendant.  In late 2007, Pacific Marine purchased the business

18  assets for a boat dealership (previously operating under the same or a similar name) from Sona's

19  brother Hagop Vartanian[2] when he was sent to prison.  The transaction transferring the business

20  to Sona was started prior to Hagop's incarceration, but not finalized until after he entered prison;

21  Sona, acting pursuant to Hagop's power of attorney and as an officer for Pacific Marine, finalized

22  the sale after Hagop's incarceration.  Following Hagop's release from prison, he returned to

23  Fresno.  Hagop's affiliation with the business after his release from prison is an issue of some

24  considerable dispute between the parties.  Hagop and Sona had a number of disputes concerning

25  Pacific Marine, culminating with Hagop allegedly physically assaulting Sona and forcing her to

26  leave the business in July 2010.  Hagop then purportedly moved Pacific Marine's inventory next

27  ────────────────

28  [2]  Hagop Vartanian is also known as "Jack," but will be referred to as Hagop herein.

door—from 10432 Highway 41 to 10452 Highway 41[3]—and changed the locks and gate codes to both addresses, preventing Sona's access.

Hagop claimed, via letter from his counsel to Sona, that he had repossessed the inventory, claiming the original purchase agreement was invalid because Sona had executed it in violation of Hagop's power of attorney and that Sona had improperly liquidated half of the inventory of the business, which served as the collateral pursuant to a security agreement securing the original purchase agreement. Sona and Pacific Marine sued Hagop in state court in September 2010, alleging breach of contract and conversion, among other causes of action. Sona and Hagop entered into a settlement agreement in November 2010, to provide for an accounting of certain debts each owed the other, though in light of subsequent litigation, this agreement does not appear to have settled the disputes between the two. That same month, Sona cancelled the insurance policy with defendant. Sona did not file an insurance claim on behalf of Pacific Marine with defendant until March 2011 (though she purportedly told their agent, an insurance broker, in August 2010 of the alleged theft), claiming Hagop had stolen the business from her and the theft was compensable under the insurance contract.

Defendant denied the claim in March 2013, citing a number of reasons, including: (1) there was no covered loss or damage under the policy because California courts require a "direct physical loss of or damage" to covered property, which requires a physical alteration to or impact on the property; (2) the removal of the property from 10432 Highway 41 by Hagop was not a theft, because Hagop had a claim of title to the property[4]; (3) there was no coverage for stock inventory on the property where the inventory was located at the time the theft occurred—the property was moved from 10432 Highway 41 to 10452 Highway 41, and the only insurance

---

[3]  The use of the buildings is a matter of some dispute between the parties. The two addresses are adjacent buildings. It is undisputed Pacific Marine stored inventory at both addresses. It is disputed whether Hagop had keys and/or an office at both addresses. It is apparently undisputed that after the alleged taking of the property, Sona no longer had access to either building.

[4]  Defendant noted here Sona's failure to treat the removal of the property as a theft, because she did not call the police and did not file an insurance claim for eight months after the alleged theft occurred.

coverage for inventory was on the 10452 property; and (4) the theft, if it occurred, was specifically excluded, because Hagop was a partner, employee, authorized representative, or person whom PMC entrusted with the property at the time of the taking, which was a specifically listed exclusion in the insurance policy.

In February 2015, following a bench trial, the state court resolved its case between Hagop and Sona, returning a verdict in favor of Pacific Marine and awarding approximately $1.17 million against Hagop on a theory of conversion, and returning a verdict in favor of Sona and awarding approximately $472,000 against Hagop on a theory of breach of a promissory note. That decision of the state trial court apparently was not appealed by Hagop.

In the instant action, plaintiff filed suit in Madera County Superior Court in May 2013. (Doc. No. 1 at 8–12.)  The action was removed to this court in June 2013 on the basis of diversity. (Doc. No. 1 at 1–3.)  Following discovery, these cross-motions for summary judgment were filed. (Doc. Nos. 76, 84.)

## II.     Legal Standards

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case."  *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325.).  *See*

4

1  *also* Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after adequate

2  time for discovery and upon motion, against a party who fails to make a showing sufficient to

3  establish the existence of an element essential to that party's case, and on which that party will

4  bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.  "[A] complete failure of proof

5  concerning an essential element of the nonmoving party's case necessarily renders all other facts

6  immaterial."  *Id.*  In such a circumstance, summary judgment should be granted, "so long as

7  whatever is before the district court demonstrates that the standard for entry of summary

8  judgment . . . is satisfied."  *Id.* at 323.

9       If the moving party meets its initial responsibility, the burden then shifts to the opposing

10  party to establish that a genuine issue as to any material fact actually does exist.  *See Matsushita*

11  *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the

12  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

13  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

14  admissible discovery material, in support of its contention that the dispute exists.  *See* Fed. R.

15  Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of America, NT & SA*, 285 F.3d

16  764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a

17  motion for summary judgment.").  The opposing party must demonstrate that the fact in

18  contention is material, i.e., a fact that might affect the outcome of the suit under the governing

19  law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v.*

20  *Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

21  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

22  party.  *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

23       In the endeavor to establish the existence of a factual dispute, the opposing party need not

24  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

25  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

26  trial."  *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

27  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

28  *Matsushita*, 475 U.S. at 587 (citations omitted).

1    "In evaluating the evidence to determine whether there is a genuine issue of fact," the

2    court draws "all reasonable inferences supported by the evidence in favor of the non-moving

3    party." *Walls v. Central Costa County Transit Authority*, 653 F.3d 963, 966 (9th Cir. 2011).  It is

4    the opposing party's obligation to produce a factual predicate from which the inference may be

5    drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),

6    *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

7    party "must do more than simply show that there is some metaphysical doubt as to the material

8    facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

9    nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation

10   omitted).

11   **III.    Analysis**

12       Because the parties' requests for judicial notice represent such a significant aspect of their

13   motions for summary judgment, particularly in plaintiffs' case, the court will first address those

14   requests below before turning to the other issues presented in the pending cross-motions.

15       A.    Judicial Notice

16       A court may take judicial notice of a fact that is not subject to reasonable dispute because

17   it can be accurately and readily determined from sources whose accuracy cannot reasonably be

18   questioned.  Fed. R. Evid. 201.  Generally, a court may take judicial notice of documents filed in

19   other court cases.  In doing so, the court is taking judicial notice of the words of the document and

20   the fact that these documents were filed in the other case.  *See Gerritsen v. Warner Bros. Entm't*

21   *Inc.*, 112 F. Supp. 3d 1011, 1032 (C.D. Cal. 2015).  However, it is not generally appropriate for a

22   court to judicially notice the truth of the factual matters asserted in such document or the veracity

23   of the legal conclusions set forth therein.[5]  *Id.* (collecting cases).

24   _____

25   [5]  By citing to the decision in *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir.
     2006), plaintiffs may be suggesting that this court should judicially notice the issues decided in

26   the state court case between Hagop and Sona.  In *Reyn's Pasta Bella,* the Ninth Circuit held in the
     context of determining whether a plaintiff was impermissibly attempting to collaterally attack a

27   class settlement that it could take judicial notice of the issues raised in the earlier class
     proceeding.  *Id.* at 746 n.6.  Plaintiffs appear to be attempting to circumvent the requirements for

28   establishing issue preclusion here by asserting that this court should judicially notice the issues

6

1    Here, both parties have requested this court take judicial notice of the Final Statement of

2  Decision from the Fresno County Superior Court case *Sona Vartanian v. Hagop Vartanian* (Case

3  No. 10CECG03180), as well as the complaint from that case.  (Doc. Nos. 78, 87.)  Defendant also

4  seeks to have this court judicially notice plaintiffs' original complaint filed in this action, the

5  notice of removal, documents showing corporate citizenship of the parties, and a declaration filed

6  by Sona in the state court action.  (Doc. No. 78, at 1–2.)  Plaintiffs meanwhile seek to have the

7  court judicially notice the following documents from the state court action between Sona and her

8  brother Hagop:  Hagop's answer to the complaint; an intermediary written decision of the state

9  court prior to the issuance of its final judgment; Hagop's post-trial brief; and a certified copy of

10  the exhibit record in the state action.  (Doc. No. 87, at 2–3.)

11    This court will take judicial notice of both the fact of these documents being within the

12  record of the state court action, and that the contents of these documents accurately reflect those

13  filed, since the documents in question are matters of public record and readily verifiable.  The

14  court will not, however, take judicial notice of any of these documents to establish the truth of the

15  underlying factual contention or the accuracy of the legal conclusions set forth therein.

16    B.    Breach of Contract

17    In order to demonstrate a breach of contract under California law, a party must show:  (1)

18  the existence of a contract; (2) plaintiff's performance under the contract or excuse for

19  nonperformance; (3) defendant's breach; and (4) resulting damages to the plaintiff.  *Oasis West*

20  *Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  California courts have held "all risk"

21  policies, which appears to be the type of policy at issue here,[6] generally cover losses due to theft.

22  _____

23  raised and litigated in the state court action between Sona and her brother.  Defendant
   understandably objects to this.  To the extent plaintiffs seek to rely on the validity of any factual

24  or legal determinations made in the state court action, the court notes that such determinations are
   not an appropriate subject of judicial notice.  *Gerritsen*, 112 F. Supp. 3d at 1032 ("It is only

25  'appropriate[, however,] for the court to take judicial notice of the content of the SEC Forms [ ]
   and the fact that they were filed with the agency.  The truth of the content, and the inferences

26  properly drawn from them, however, is not a proper subject of judicial notice under Rule 201.'")
   (quoting *Patel v. Parnes*, 253 F.R.D. 531, 546 (C.D. Cal. 2008)).

27  [6]  The court again notes, as it did at the hearing, that neither party has clarified what exactly is

28  covered by the contract at issue.  The parties agree theft is covered, and defendant acknowledged

7

1   *EOTT Energy Corp. v. Storebrand Int'l Ins. Co.*, 45 Cal. App. 4th 565, 569 (1996).  The parties

2   concede the existence of an insurance contract here and that it covers losses due to theft, but

3   dispute whether a theft occurred requiring compensation under that contract.

4         Plaintiffs argue Hagop "[c]onverted over $800,000.00 in property from Plaintiff and that

5   conversion was a covered loss under the insurance policy as a theft."[7]  (Doc. No. 84-1 at 11.)

6   According to plaintiffs, the matter is a simple one because conversion is theft.  (*Id.*)  Further,

7   acting under a claim of title is only a defense to theft if the purported thief acts in good faith.  (*Id.*)

8   (citing *People v. Seymour*, 54 Cal. App. 2d 266, 276–77 (1942)).  According to plaintiffs, Hagop

9   did not act in good faith because he failed to comply with two state repossession laws—

10  California Commercial Code § 9609, requiring repossession without a disturbance of the peace,

11  and California Commercial Code § 9611, requiring notification to the debtor after sale of the

12  repossessed property—during his alleged repossession.  Defendant argues Hagop not only had

13  several claims of right to the property, but in fact asserted them.  It further argues that the

---

15  at the hearing that property damage is covered (though no property damage was alleged).
16  Defendant suggests this is an "all-risk" property policy, which covers "fortuitous loss not
    resulting from misconduct or fraud."  (Doc. No. 76-1 at 28.)  Indeed, the contract itself states
17  defendant "will pay for direct physical loss of or damage to Covered Property at the premises
    described in the Declarations caused by or resulting from any Covered Cause of Loss."  (Doc. No.
18  79-1 at 137.)  This language appears somewhat broader than merely that of a policy covering only
    theft and property damage.

19  [7]  The *only* theory plaintiffs raised to support their claim for breach of contract is that Hagop stole
20  the inventory of Pacific Marine when he converted it, which obligated defendant insurer to pay
    under the insurance contract.  Plaintiffs asserted at the hearing that, even if this was not a theft, it
21  was still a loss compensable under the contract, a theory it appears was first asserted to the court
    by plaintiffs in their opposition to defendant's motion for summary judgment.  (Doc. No. 116, at
22  20) ("If . . . Hagop did somehow take the property under a perceived but ultimately wrong claim
    of right, that would not eliminate the reality that it was a conversion, and . . . that would be a
23  compensable loss under the policy.").  Whether and how plaintiffs may expand their theory for
24  relief is not currently before the court and is not decided here.  The court does note, however, that
    plaintiffs are generally prohibited from changing their theory of liability at the summary judgment
25  stage, following the close of discovery, if it would prejudice the defendant or if the defendant was
    not made aware of the alternative theory of liability during discovery.  *Coleman v. Quaker Oats*
26  *Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint guides the parties' discovery putting the
    defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's
27  allegations.").  The instant motions are decided on the assumption that proving a theft occurred is
28  a necessary element of plaintiffs' case.

1    evidence on summary judgment establishes that Sona did not treat the dispute that occurred as a

2    theft, and failed to report it to the police or insurance company until months afterward, in which

3    time she had commenced litigation and entered a mediation and settlement calling for an

4    accounting of the debts between herself and her brother, Hagop.

5                    *1.    Plaintiffs' Assertions of Issue Preclusion*

6            As a preliminary matter, the court must also discuss plaintiffs' claim that any attempt by

7    defendant to dispute the facts relevant to this lawsuit is precluded by the existence of a state court

8    judgment against Hagop.  (Doc. No. 84-1 at 16–20.)  Specifically which facts plaintiffs claim are

9    subject to issue preclusion is unclear:  at one point, plaintiffs state "defendant seeks to put at issue

10   several questions of fact that have already been decided by a State Trial Court," (Doc. No. 84-1 at

11   17), but later states "defendant seeks to relitigate everything."  (Doc. No. 84-1 at 20).  It appears

12   plaintiffs are maintaining that defendants are bound to pay them under the insurance contract

13   simply because a cause of action for conversion was sustained in favor of Sona against Hagop in

14   state court.  (*See* Doc. No. 84-1 at 18 ("Judgment against Hagop Vartanian in the State Court

15   matter should be binding upon the defendant liability insurer even though defendant had no

16   contractual duty to defend.  Defendant is simply seeking to relitigate matters that have already

17   been decided.")).  Plaintiffs' argument on this point has no support in the law.

18            "The preclusive effect of a state court judgment in a subsequent federal lawsuit generally

19   is determined by the full faith and credit statute."  *Marrese v. American Academy of Orthopaedic

20   Surgeons*, 470 U.S. 373, 380 (1985).  By statute, a state's judicial proceedings "shall have the

21   same full faith and credit in every court within the United States . . . as they have by law or usage

22   in the courts of such State . . . from which they are taken."  28 U.S.C. § 1738.  The federal court

23   must look to the preclusion law of the state in which the judgment was rendered in order to decide

24   whether preclusion applies in the federal action.  *Marrese*, 470 U.S. at 380.  Therefore, the court

25   looks to California law concerning whether issue preclusion applies in this case.

26            The California Supreme Court has explained that collateral estoppel and issue preclusion

27   are synonymous terms, and both "preclude[ ] relitigation of issues argued and decided in prior

28   proceedings."  *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896 (2002) (quoting *Lucido v.*

1    *Superior Court*, 51 Cal. 3d 335, 341 (1990)).  The test for issue preclusion in California requires

2    five factors to be met:  (1) the issue sought to be precluded must be identical to that decided in the

3    prior proceeding; (2) the issue must have been actually litigated; (3) the issue must have been

4    necessarily decided; (4) the prior decision must be final and on the merits; and (5) the party

5    against whom preclusion is sought must be the same as, or in privity with, the party to the prior

6    proceeding.  *Lucido v. Superior Court*, 51 Cal. 3d 335, 341 (1990).

7          As the California Supreme Court has explained recently, "privity requires the sharing of

8    'an identity or community of interest,' with 'adequate representation' of that interest in the first

9    suit, and circumstances such that the nonparty 'should reasonably have expected to be bound' by

10   the first suit." *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 819–20 (2015) (quoting *Clemmer*

11   *v. Hartford Ins. Co.*, 22 Cal. 3d 865, 875 (1978)).  "A nonparty alleged to be in privity must have

12   an interest so similar to the party's interest that the party acted as the nonparty's virtual

13   representative in the first action." *Id.* at 820 (internal quotations omitted).  "Unlike claim

14   preclusion, issue preclusion can be invoked by one not a party to the first proceeding.  The bar is

15   asserted against a party who had a full and fair opportunity to litigate the issue in the first case but

16   lost." *Id.* (internal citations omitted).

17         Plaintiffs here are clearly not entitled to issue preclusion.  They have failed at the outset to

18   even argue which issues of factual dispute they claim are resolved by the prior state court

19   litigation, and simply assert "defendant is attempting to relitigate everything."  (Doc. No. 84-1 at

20   20.)  To the extent plaintiffs seek to establish "everything" in the instant action was decided in the

21   former case, this is obviously untrue.  The earlier state court litigation concerned allegations of

22   conversion and breach of a promissory note by Sona and Pacific Marine against Hagop.  The

23   current case involves a breach of an insurance contract action, and derivative tort action, by

24   Pacific Marine and Sona against the former's insurer.  The two actions are obviously not the

25   same, and "everything" about this action was most certainly not decided in the last one.  This

26   court will not hazard a guess as to which issues plaintiffs think are precluded by the state court

27   judgment.

28   /////

1    Plaintiffs' list of disputed facts might suggest they believe defendant's facts identified at

2    paragraphs 14 through 18, 20 through 45, 57, 62, 67 through 69, 74 through 79, and 82, were all

3    settled in the prior state court litigation.  (*See* Doc. No. 118.)  Even assuming those are the facts

4    on which plaintiffs seek to establish issue preclusion, plaintiffs have not established defendant

5    Philadelphia Indemnity Insurance Company was in privity with Hagop such that it should have

6    reasonably expected to be bound by the decision in that case.[8]  Nor have plaintiffs shown that

7    each issue in this case is identical to what was decided in the prior litigation.  "The party asserting

8    issue preclusion bears the burden of establishing [the] requirements" showing preclusion should

9    apply.  *Needelman v. DeWolf Realty Co., Inc.*, 239 Cal. App. 4th 750, 757 (2015).  Plaintiff has

10   failed to meet this burden here, because it has generally failed to identify which issues it seeks

11   preclusion on, has failed to demonstrate defendant here was in privity with the defendant in the

12   underlying state court case, and has failed to demonstrate the issues are identical to those decided

13   in the state court litigation.  In short, plaintiffs have made no attempt to make the required

14   showing with respect to any of the required factors.

15                  *2.    Plaintiffs' Motion for Summary Judgment on Breach of Contract*

16          Having established plaintiffs are not entitled to issue preclusion on any factual or legal

17   issue, the court next considers plaintiffs' claim that summary judgment should be granted in their

18   favor on their breach of contract claim.  Plaintiffs maintain they are entitled to summary judgment

19   against defendant because the latter breached its contract when it failed to compensate plaintiffs

20   for Hagop's theft of Pacific Marine's inventory.  This loss was compensable under the contract,

21   they argue, because theft is generally compensable under all-risk policies such as this one, and

22   "conversion constitutes theft."  (Doc. No. 84-1 at 11.)  Plaintiffs' argument once again is

23   unsupported by California law and must be rejected.

---

24   [8]  Indeed, Philadelphia has presented a number of compelling arguments that not only was it
25   not in privity, but that it would have been prohibited from intervening in the state court action
     between Sona and Hagop if it had tried because it denied coverage.  (*See* Doc. 104 at 35–37)
26   (citing *Hinton v. Beck*, 176 Cal. App. 4th 1378, 1384 (2009) (noting that by denying coverage to
     an insured, "the insurer has lost its right to control the litigation" and may not intervene)).
27   Certainly, plaintiffs have identified no obligation of defendant's, through the contract or
     otherwise, to defend third-party tortfeasors being sued by plaintiffs.
28

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Welco Electronics, Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014). Conversion is a strict liability tort, and liability for it "rests neither in the knowledge nor the intent of the defendant." *Id. See also Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066–67 (1998).

In contrast, theft is defined statutorily in California as a criminal act, with an accompanying *mens rea*. Cal. Penal Code § 484; *see also People v. Lawson*, 215 Cal. App. 4th 108, 113–14 (2013) (theft by larceny requires intent to steal the property); *People v. Zangari*, 89 Cal. App. 4th 1436, 1441–42 (2001) (*mens rea* of theft requires "the intent to permanently deprive a person of property"); *Ferraro v. Pacific Fin. Corp.*, 8 Cal. App. 3d 339, 348 n.3 (1970) (Penal Code § 484 requires "intent to permanently deprive the owner of its possession"). The intent which underlies a theft must be felonious, and because the crime of theft requires the "intent to steal," "California courts for over 150 years have recognized" that "a good faith belief that the specific property taken is one's own" is a defense to a charge of theft. *People v. Tufunga*, 21 Cal. 4th 935, 938–39 (1999). This is also called having a "claim of right." *Id.* By comparison, "[c]onversion is a species of strict liability in which questions of good faith, lack of knowledge and motive are ordinarily immaterial." *Moore v. Regents of University of California*, 51 Cal. 3d 120, 144 n.38 (1990) (en banc).

Furthermore, in the insurance context, California courts have explained that words such as "theft," "stolen," "robbery," and "pilferage," are words "that are well understood, and . . . are used in insurance policies in their common and ordinary meaning." *Barnett v. State Farm General Ins. Co.*, 200 Cal. App. 4th 536, 543 (2011) (quoting *Granger v. New Jersey Ins. Co.*, 108 Cal. App. 290, 294 (1930)). Particularly, in an allegation of theft, a felonious taking of property is required. *Id.* As further explained:

> The requirement in the words "theft" and "stolen" of a felonious taking is critical because it is not enough to commit a "trespass" against another's right of possession, rather there must exist a criminal "intent to steal," or "animus furandi," that consists of "the intent, without a good faith claim of right, to permanently deprive

12

the owner of possession.

*Id.* (quoting *People v. Davis*, 19 Cal. 4th 301, 305 (1998)).  Analyzing the issue further, the

California Court of Appeals noted:

> [The act in question] cannot constitute a "theft" because it was neither criminal nor . . . was there any evidence of an intent to deprive Barnett of his property permanently and in a criminal manner, rather than by due process of law.  The initial taking was not a criminal act because a claim of right dispels the criminal character necessary to constitute a theft within the common meaning of the word. . . .
>
> Stated simply, a claim of right to take disputed property negates the criminal intent necessary for theft.  Section 511 of the Penal Code codifies this principle, providing that a claim of right vitiates criminal charges where the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable.  **Thus, in the insurance context, the fact that the alleged wrongdoer acted under a bona fide claim of title removes the criminal character from his or her act, and, therefore, takes the loss out of the coverage of a policy covering loss via such offenses.**

*Id.* at 544–45 (internal citations and quotations omitted) (emphasis added).

Much of plaintiffs' arguments about the equivalency of conversion and theft focuses on

the fact that judgment was ultimately granted in their favor in the state court litigation against

Hagop.  However, a defining difference between theft and conversion is whether there was a

*claim* of right at the time of the taking, not whether the claim is ultimately found to be correct or

valid.  The state appellate court in *Barnett* noted that, because what is at issue is a claim of right,

it was axiomatic the claim "may later be undercut or proven inferior or unavailing once the matter

is litigated, but this does not change the fact the initial taking is not criminal under California

law." *Id.* at 545.  "[T]he third party's intent matters," and a "claim of right at the time of the

taking . . . dispels the criminal character required to constitute a theft." *Id.* at 546.

A claim of right, of course, does require a "*good faith* belief that the specific property

taken is one's own." *Tufunga*, 21 Cal. 4th at 939 (emphasis added).  "[B]ad faith means simply

that the action or tactic is being pursued for an improper motive." *Gemini Aluminum Corp. v.*

*California Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 1263 (2002).  Bad faith can be shown by

demonstrating a party acted for improper purposes such as causing delay or for harassing the

1    other side.  *Id.*   A complete lack of merit in a legal proceeding *may* be evidence of bad faith, but

2    does not conclusively determine it and it is not mandatory for the court to find that it does.

3    *Summers v. Cathedral City*, 225 Cal. App. 3d 1047, 1073 (1990).

4        It is plaintiffs' burden at trial and here to demonstrate that a theft occurred, requiring

5    evidence the property was taken and the alleged thief did so with the requisite intent.  *See Barnett*,

6    200 Cal. App. 4th at 543–45.  The only arguments or evidence presented by plaintiffs in support

7    of their motion for summary judgment suggesting Hagop did not act in good faith are his alleged

8    failure to comply with California Commercial Code § 9609, because he did not "repossess the

9    property without a disturbance of the peace" because he allegedly assaulted Sona in the process,

10   (Doc. 84-1 at 11), and California Commercial Code § 9611, which requires notice to be sent to

11   the debtor when the repossessed property has been disposed of.  (Doc. No. 84-1 at 12.)

12   Additionally, plaintiffs cite the state court decision and suggested at the hearing on the pending

13   motions that, even if not preclusive, the state court's decision is evidence in their favor which

14   should be weighed in considering their motion for summary judgment.  This, plaintiff concludes,

15   establishes that Hagop acted in bad faith in repossessing the property.

16       What plaintiffs proffer on summary judgment is insufficient to establish that Hagop acted

17   in bad faith in claiming a right to the property in question.  Even assuming a breach of the peace

18   did occur and Hagop failed to give the required notice,[9] the court can conceive of numerous

19   reasons why one might fail to comply with these two provisions—anger and ignorance, for

20   example—while still believing one had a claim of right to the property subject to repossession.

21   Hagop's compliance with procedural notice requirements of repossession laws, while not wholly

22   inapposite to the issue, carries little evidentiary weight, especially in light of the undisputed fact

23   that Hagop is only semi-literate in English.  (Doc. No. 77, at ¶ 12.)  Additionally, while any

24

25   [9]  "Breach of the peace" is an action that tends to provoke violence or involves the causing of a
26   loud and unreasonable noise, and is codified at California Penal Code § 415.  *See Hoffman v.
     Municipal Court*, 3 Cal. App. 3d 621, 625 (1970).  Plaintiffs have offered no evidence on
     summary judgment that Hagop's conversion provoked violence or caused loud and noise.
27   Further, defendant disputes the occurrence of an assault.  (Doc. No. 105, at ¶¶ 10–12.)  It is
28   unclear whether defendant disputes Hagop's failure to give notice.

1   assault is obviously to be condemned, it is also not surprising that violence has sometimes been

2   associated with repossession activities.  *See, e.g.*, *People v. Butler*, Case No. F037677, 2002 WL

3   31058309 (Cal. Ct. App. 2002) (defendant claimed tow truck ran into his car while attempting to

4   repossess it, resulting in him threatening two truck drivers at gunpoint).  The existence of an

5   assault by Hagop would not invalidate his claim of right, even if it may have prevented him from

6   utilizing the self-help provisions of California law.  Indeed, whether an individual improperly

7   repossessed property is just the type of action which would give rise to a claim for *conversion*,

8   not theft.  *See Henderson v. Security Nat'l Bank*, 72 Cal. App. 3d 764, 770 (1977) (conversion

9   action lies if repossession statutes violated); *Cerra v. Blackstone*, 172 Cal. App. 3d 604, 609

10   (1985) (conversion action lies even where property was lawfully repossessed, once party

11   established right to possession).

12       Additionally, the state court decisions in Sona's case against Hagop provides no further

13   evidence on which this court may rely in considering the cross motions for summary judgment.

14   As defendant notes, admitting the state court decisions to provide factual evidentiary support is

15   barred because they are hearsay.  To the extent plaintiffs suggest those decisions speak to the

16   truth of the matter asserted, defendant is correct and they are inadmissible hearsay.  Fed. R. Evid.

17   801, 802.  For the reasons set forth above, plaintiffs have not established issue preclusion and

18   judicial notice is not an appropriate vehicle to establish the veracity of factual matters contested in

19   the prior state court litigation which did not involve all of the parties before this court.

20       Defendant, meanwhile, has come forward at summary judgment with evidence indicating

21   that Hagop acted in good faith in taking the property in question, including:  Sona's many

22   purported breaches of fiduciary duty (Doc. No. 105 at 47–61, ¶¶ 11–47); the existence of security

23   agreements allowing for repossession of the property (Doc. No. 105 at 55–57, 66–67, ¶¶ 31–33,

24   67–69); Hagop's letter asserting he had repossessed the property (Doc. No. 105 at 65, ¶ 65); the

25   fact that plaintiffs did not submit the claim to defendant for eight months following the alleged

26   taking (Doc. No. 105 at 67, ¶ 70); and Sona's failure to report the alleged theft to the police (Doc.

27   No. 105 at 76, ¶ 100).  Though some of these facts are disputed, for the purposes of plaintiffs'

28   summary judgment motion, the court must construe any disputes in favor of defendant.  Given the

15

1  evidence before it on summary judgment, the court is unable to conclude that there is no genuine

2  dispute of material facts as to plaintiffs' breach of contract claim.  Therefore plaintiffs' motion for

3  summary judgment with respect to that claim must be denied.

4         *3.*      *Defendant's Motion for Summary Judgment on Breach of Contract*

5        Defendant maintains that it is entitled to summary judgment in its favor on plaintiffs'

6  breach of contract claim because plaintiffs have no claim for loss under the insurance contract.

7  First, there was no theft, per defendant, as evidenced by Hagop's claims of right and his assertion

8  of those claims.  Additionally, defendant alleges Hagop's taking was not a theft because the

9  evidence establishes that Sona did not act in response to the dispute as one would act towards a

10  theft in that she did not file a police report or a claim with her insurer for many months.  Instead,

11  she filed suit against Hagop, entered a settlement agreement (albeit short-lived) calling for an

12  accounting of their debts, and cancelled her insurance policy.  Second, defendant asserts it did not

13  breach the insurance contract because Sona's intentional acts and misconduct led to the taking of

14  the property in question, and therefore there is no compensable loss under the terms of that

15  contract.  Third, defendant contends that there was no loss because the property was never

16  removed from the covered premises according to the evidence before the court on summary

17  judgment.

18        Moreover, even if there was a compensable loss under the contract, defendant asserts the

19  loss is excluded by the authorized representative and property entrustment exclusion under the

20  insurance contract of the parties.  Further, even if the loss is not excluded, according to defendant,

21  plaintiff Sona Vartanian cannot state a claim because she is not a party to the insurance contract.

22  The court will address each of these arguments in turn.

23        (i).    Genuine Dispute Regarding Loss Under the Contract

24        The key dispute between the parties is whether Hagop acted in good or bad faith in

25  asserting his claim of right.  The parties do not dispute Hagop took property, asserted a good faith

26  claim of right to it, and was ultimately unsuccessful in subsequent litigation as to his claim to the

27  property.

28  //

16

1      Concerning good and bad faith, the California courts have noted an alleged thief's

2   statement of good faith is not dispositive of the issue, and "the circumstances must be indicative

3   of good faith." *People v. Russell*, 144 Cal. App. 4th 1415, 1428 (2006) (quoting *People v.*

4   *Stewart*, 16 Cal. 3d 133, 140 (1976)).  Further, "[t]he defendant may hold a belief in good faith

5   even if the belief is mistaken or unreasonable." *Id.* at 1429.  However, "if the defendant was

6   aware of facts that made the belief *completely* unreasonable," the jury may consider that as

7   evidence of bad faith (though it is still not required to find bad faith). *Id.*  A person's

8   concealment of the taking alleged to constitute a theft is probative of the inquiry into good faith.

9   *See, e.g.*, *People v. Stewart*, 16 Cal. 3d 133, 141 (1976) ("[L]ack of concealment is relevant to the

10   existence of felonious intent."); *People v. Fenderson*, 188 Cal. App. 4th 625, 644 (2010) ("Thus,

11   concealment (or absence of concealment) is relevant when a claim-of-right defense is raised in

12   connection with theft by whatever means.").  The question of good or bad faith is "ordinarily a

13   question of fact to be determined by a jury," unless "'there are no conflicting inferences [and]

14   reasonable minds could not differ.'" *Dalrymple v. United Servs. Auto. Ass'n*, 40 Cal. App. 4th

15   497, 511 (1995) (quoting *Walbrook Ins. Co. v. Liberty Mut. Ins. Co.*, 5 Cal. App. 4th 1445, 1454–

16   55 (1992)).

17      The question for this court at this stage of the litigation is whether reasonable minds could

18   differ as to Hagop's good or bad faith.  The court finds that they could.  In marshaling evidentiary

19   support for its position, defendant primarily argues the merits of Hagop's potential claims of

20   right.  Defendant reasons that because Hagop had a number of potential claims of right and

21   asserted a claim of right, he did not do so in bad faith.  Defendant comes forward with some

22   compelling evidence on summary judgment suggesting Sona may have breached her fiduciary

23   duty while acting as Hagop's power of attorney, which would render the underlying purchase

24   agreement voidable.  Defendant also has come forward with evidence suggesting Sona may have

25   violated a security agreement, pursuant to which Hagop could repossess property from Pacific

26   Marine secured by that agreement.  Further, the evidence before the court establishes that Hagop

27   and Sona entered into mediation and a potential settlement agreement calling for an accounting

28   between the parties of their respective debts.  Defendant suggests this behavior is indicative of a

17

1   claim of right (whether or not the settlement was ever finalized), not a theft.  Defendant also

2   emphasizes that it is undisputed that neither plaintiff ever filed a police report or notified the

3   defendant insurer until significantly later, again suggesting that this was a legitimate business

4   dispute and not a theft.

5          In response, the plaintiffs rest on what they claim is evidentiary support to be gleaned

6   from the state court decision against Hagop and a declaration from Sona.  Again, the state court

7   decision is of no evidentiary weight here.  In her declaration, however, Sona states that Hagop

8   beat her up, terrified her, threatened her with death, and chased her out of her business.  (Doc. No.

9   121 at ¶ 3.)  She also states in that declaration that Hagop did not advise her of any breach of their

10  contract, and did not tell her of any grounds to declare her in default and repossess her property.

11  (Doc. No. 121 at ¶ 4.)  Finally, according to Sona's declaration, after Hagop beat her up and took

12  her boats, he broke into her building and moved the boats away from the building she had been

13  leasing.  (Doc. No. 121 at ¶ 24.)

14         Sona's declaration establishes the existence a genuine dispute of material fact precluding

15  the granting of summary judgment in favor of defendant.  It is a material fact in this case whether

16  Hagop acted in good or bad faith.  Further, for purposes of defendant's motion for summary

17  judgment, the court must draw all reasonable factual inferences from the evidence before it in

18  favor of plaintiffs.  Based on the evidence before the court on summary judgment, a reasonable

19  jury could conclude from Sona's statements that Hagop beat her up and forced her out of the

20  property.  This could lead a reasonable jury to conclude that Hagop acted in bad faith.

21  Accordingly, defendant's motion for summary judgment on this basis is denied.

22                          (ii).    Sona's Intentional Acts and Misconducts

23         Defendant asks the court to hold that any losses suffered by plaintiffs are not fortuitous

24  but rather resulted from Sona's affirmative acts and misconduct in dealing with Hagop.

25  According to defendant, a loss is only fortuitous if it happens by chance or accident and is not

26  caused by the party's own conduct.  Because of the convoluted nature of Sona and Hagop's

27  business transactions, "[t]he dispute over the boat inventory was thus not fortuitous; it was

28  virtually inevitable."  (Doc. No. 76-1 at 22.)

1    Defendant cannot prevail on this theory by way of summary judgment.  Again, any

2    disputes of material fact must be resolved in favor of plaintiffs.  This requires the court to assume

3    the veracity of Sona's statements in her declaration concerning Hagop's physical assault and

4    forcing her from her business without reason.  With this evidence taken as true, the court cannot

5    say that as a matter of law her actions made it "virtually inevitable" she would be assaulted and

6    driven out of the business.  A jury could find that, regardless of any misconduct allegedly

7    committed by Sona, Hagop's actions evidenced bad faith on his part concerning his alleged claim

8    of right to the property.

9                              (iii).    Failure to Move the Property

10    Defendant also contends that, because the property in question was not physically moved

11    out of the insured premises, there can be no liability for insurer to pay under the insurance

12    contract.  As noted above, theft retains its common meaning, even in insurance contracts.

13    *Barnett*, 200 Cal. App. 4th at 543.  The California Penal Code defines theft broadly, and

14    generically includes the taking of another's property.  Cal. Pen. Code § 484(a).   "A felonious

15    'taking' occurs . . . when the offender secures dominion and control over the property."  *Barnett*,

16    200 Cal. App. 4th at 544 (citing *People v. Duran*, 88 Cal.App.4th 1371, 1377 (2001)).  There is

17    no requirement the property be transported for a theft to occur, so long as the alleged thief has

18    dominion and control.  Here, the parties do not dispute that after the point when the alleged theft

19    occurred Hagop had dominion and control of the business assets, as evidenced by his changing of

20    the locks on the business.  Therefore, defendant is not entitled to summary judgment in its favor

21    based merely on Hagop's failure to move the property.

22                              (iv).    Exclusions

23    According to defendant, even if plaintiffs suffered a loss contemplated by the insurance

24    policy, defendant did not breach its contract because any loss claims are excluded pursuant to the

25    contract's "authorized representative" exclusion.  In total, this exclusion states as follows:

26          h.      Dishonest or criminal act by you, any of your partners,
                    employees (including leased employees), directors, trustees,
27                  authorized representatives or anyone to whom you entrust
                    the property for any purpose:
28

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

(Doc. No. 79-1 at 162.)

Policy exclusions put in place by the insurer are strictly construed under California law. *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 471 (2004) (internal citations omitted). As the California Supreme Court has explained:

> An insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect. Thus, the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language. The exclusionary clause must be conspicuous, plain and clear. This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded.

*Id.* (quotations and citations omitted).

Here, the parties are not disputing the meaning of the terms "authorized representative" or "entrust" as they appear in their contract. Rather, they disagree factually about Hagop's role in the business activities of plaintiff Pacific Marine. Specifically, it is disputed whether Hagop was an authorized representative of Pacific Marine. Plaintiffs point to a notice posted by Sona in July 2010 in which she asserted Hagop "does not work or consult" for Pacific Marine and that people he purportedly hired should not consider themselves hired by Pacific Marine. (*See* Doc. No. 86-1 at ¶ 9.) Plaintiffs also have submitted on summary judgment a number of statements from Sona in both her deposition and her declaration averring that Hagop was not an authorized representative or employee of Pacific Marine. (*See, e.g.*, Doc. No. 118 at 41–49; Doc. No. 121 at ¶ 16.)

Defendants, meanwhile, produce evidence tending to show that Hagop was an authorized representative of Pacific Marine. This includes statements by Sona at Hagop's deportation

20

1   hearing that he would be running Pacific Marine in a "management position" if not deported,

2   (Doc. No. 77 at ¶ 49), probation reports showing Hagop's place of employment as Pacific Marine

3   (Doc. No. 77 at ¶ 51), deposition testimony of Hagop and as well as former employee Michael

4   Makredes regarding Hagop's sale and purchase of boats for Pacific Marine (Doc. No. 77 at ¶ 50),

5   extrinsic evidence suggesting Hagop bought and sold boats for Pacific Marine (Doc. No. 77 at

6   ¶¶ 53–54), and evidence that Hagop had offices in both of the two buildings in question as well as

7   keys to both.  (Doc. No. 77 at ¶ 55.)[10]

8       At the summary judgment stage, "the judge's function is not himself to weigh the

9   evidence and determine the truth of the matter but to determine whether there is a genuine issue

10   for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "Summary judgment is an

11   inappropriate vehicle for resolving claims that depend on credibility determinations." *Earp v.*

12   *Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005).  Because any factual resolution of Hagop's status

13   as an authorized representative of plaintiff Pacific Marine would involve credibility

14   determinations with respect to Sona and other witnesses, the defendant's motion for summary

15   judgment under this theory must also be denied.

16            (v).    Sona's Ability to Recover For a Breach of Contract

17       Defendant next argues that, regardless of whether it breached its insurance contract, Sona

18   cannot recover under the contract because she is not a party to that contract.  Indeed, plaintiffs do

19   not dispute that Sona is not named as an insured on the contract.  Rather, they appear to argue that

20   she is an intended third-party beneficiary of the contract.

21       The essence of plaintiffs' claim here is that the insurance contract covers certain

22   unidentified personal property of Sona's allegedly converted by Hagop.  Plaintiffs point to no

23   evidence presented in connection with these summary judgment motions establishing that Sona

24   lost any personal property due to Hagop's alleged conversion, nor do they identify what this

25

26   [10]  Sona disputes the evidentiary value of much of defendant's evidence.  For instance, she claims the probation reports, which she filled out, only advised the probation office of Hagop's location

27   during the day and did not indicate that he worked for Pacific Marine.  (Doc. No. 118 at ¶ 51.) She also generally asserts any activities Hagop engaged in for Pacific Marine were done on his

28   own volition and without her authorization.  (*See, e.g.*, Doc. No. 118, at ¶¶ 50, 52, 53.)

1   personal property was, even in a general sense.  Defendant responds that plaintiffs have never

2   identified any personal property of Sona's at issue nor have they ever indicated during discovery

3   that they sought compensation for such losses.  Indeed, defendant points the court to a response to

4   an interrogatory indicating the lost property regarding which plaintiffs were asserting a claim was

5   the inventory of Pacific Marine.  Plaintiffs do not seem to have previously notified either the

6   court or the defendant that they sought compensation for additional personal property of Sona's.

7   Indeed, the court has understood the lost property at issue solely to be the business assets of

8   Pacific Marine, primarily its inventory of boats.  This is a distinct theory of liability not raised in

9   the complaint, plaintiffs' own motion for summary judgment, or in either plaintiffs' separate

10  statement of facts or its response to defendant's separate statement of facts.[11]  Indeed, it appears

11  this theory of liability was not raised until the reply to defendant's motion for summary judgment,

12  after several years of discovery.

13      The court will not entertain this new theory of liability, and accordingly will grant

14  summary judgment in favor of defendant and dismiss any purported claims for breach of contract

15  brought by plaintiff Sona Vartanian.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292–94

16  (9th Cir. 2000) (upholding district court decision not to allow plaintiffs to proceed on alternate

17  theory of liability which plaintiffs did not raise during years of intervening discovery).

18      C.   Breach of the Implied Covenant of Good Faith and Fair Dealing

19      Plaintiffs also move for summary judgment on their claim of breach of implied covenant

20  of good faith and fair dealing claim.  In response, defendant has moved for summary judgment in

21  its favor as to that claim.

22          *1.   Legal Standards*

23      California has a well-established cause of action sounding in tort, rather than contract,

24  against an insurer who breaches the implied covenant of good faith and fair dealing with its

25  insured, when it "unreasonably and in bad faith withholds payment of the claim of its insured."

26  *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683–85 (1988) (en banc) (quoting *Gruenberg v.*

---

27  [11] In fact, in its response to defendant's separate statement of facts, plaintiffs suggest that Sona's
28  breach of contract claim is based on emotional distress, not a loss of personal property at all.

1    *Aetna Ins. Co.*, 9 Cal. 3d 566, 575 (1973)).  For an insurer to fulfill its obligations, it "must give

2    at least as much consideration to the latter's interests as it does to its own."  *Egan v. Mutual of*

3    *Omaha Ins. Co.*, 24 Cal. 3d 809, 818–19 (1979) (en banc).  "While an insurance company has no

4    obligation under the implied covenant of good faith and fair dealing to pay every claim its insured

5    makes, the insurer cannot deny the claim 'without fully investigating the grounds for its denial.'"

6    *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720–21 (2007) (quoting *Frommoethelydo v. Fire*

7    *Ins. Exchange*, 42 Cal. 3d 208, 215 (1986) (en banc)).  This requires the insurer to "fully inquire"

8    into the possible bases supporting the insured's claim before denying it."  *Id.* at 721.  Further,

9    "denial of a claim on a basis unfounded in the facts known to the insurer, or contradicted by those

10   facts, may be deemed unreasonable."  *Id.*

11        Breaches of the implied covenant of good faith and fair dealing in the insurance context

12   are subject to what is known as the "genuine dispute rule."  As explained by the California

13   Supreme Court:

14        [A]n insurer's denial of or delay in paying benefits gives rise to tort
15        damages only if the insured shows the denial or delay was
         unreasonable.  As a close corollary of that principle, it has been said
16        that an insurer denying or delaying the payment of policy benefits
         due to the existence of a genuine dispute with its insured as to the
17        existence of coverage liability or the amount of the insured's
         coverage claim is not liable in bad faith even though it might be
18        liable for breach of contract.

19        The genuine dispute rule does not relieve an insurer from its
         obligation to thoroughly and fairly investigate, process and evaluate
20        the insured's claim.  A genuine dispute exists only where the
         insurer's position is maintained in good faith and on reasonable
21        grounds.  Nor does the rule alter the standards for deciding and
         reviewing motions for summary judgment.  The genuine issue rule
22        in the context of bad faith claims allows a trial court to grant
         summary judgment when it is undisputed or indisputable that the
23        basis for the insurer's denial of benefits was reasonable—for
         example, where even under the plaintiff's version of the facts there
24        is a genuine issue as to the insurer's liability under California law.
         On the other hand, an insurer is not entitled to judgment as a matter
25        of law where, viewing the facts in the light most favorable to the
         plaintiff, a jury could conclude that the insurer acted unreasonably.
26        Thus, an insurer is entitled to summary judgment based on a
         genuine dispute over coverage or the value of the insured's claim
27        only where the summary judgment record demonstrates the absence
         of triable issues as to whether the disputed position upon which the
28        insurer denied the claim was reached reasonably and in good faith.

1    *Id.* at 723–24 (internal citations and quotations omitted).

2          This duty to investigate does not expose an insurer to liability absent evidence that "a

3    reasonable investigation would have uncovered evidence to establish coverage or a potential for

4    coverage." *American Int'l Bank v. Fidelity & Deposit Co.*, 49 Cal. App. 4th 1558, 1571 (1996).

5    An insurer may always "simply deny the request and take its chance that the trier of fact in an

6    action alleging bad faith breach of the contractual duty to defend will agree that no defense was

7    owed." *Eigner v. Worthington*, 57 Cal. App. 4th 188, 195–96 (1997).

8                    2.      *Plaintiffs' Motion for Summary Judgment on Breach of Implied Covenant*

9                            *of Good Faith and Fair Dealing*

10         Plaintiffs' argument for summary judgment on this claim is far from clear.  In fact, the

11   only argument advanced by plaintiffs which is specifically related to both this issue and this case

12   reads in its entirety as follows:

> In the present case, defendant clearly has sought to discover only
> the evidence that defeats plaintiffs' claim, and has held its own
> interest above that of its insured.  Defendant has acted unreasonably
> by ignoring evidence available which supports plaintiffs' claims.

16   (Doc. No. 84-1 at 8–10.)  Later, under a separate subheading, plaintiffs appear to return to this

17   claim and set out the following five reasons why summary judgment on it should be granted in

18   their favor:  (1) while defendant claimed Sona did not file a police report following the theft, she

19   actually did; (2) defendant's denial of the claim for late notice was invalid for a number of

20   reasons; (3) Hagop was not in fact employed at the time of the theft; (4) the inventory was

21   covered property regardless of whether it was on the 10432 Premises or the 10452 Premises; and

22   (5) there was no valid business dispute between plaintiffs and Hagop.  The court addresses each

23   of these arguments in turn.

24         First, plaintiffs claim Sona filed a police report by reporting the theft to the California

25   Department of Motor Vehicles (DMV), which plaintiffs claim is a law enforcement agency.  The

26   court notes that both the declination letter and the insurance policy in question reference the

27   importance of filing a report with the police in the event of criminal activity.  While the DMV's

28   officers do have limited powers as peace officers, those powers are restricted to "enforcing those

24

provisions of law committed to the administration of the department or enforcing the law on premises occupied by the department." Cal. Vehicle Code § 1655.  It is unclear why plaintiffs believe the DMV has either the obligation or the authority under state law to investigate, make arrests for, or prosecute alleged criminal activity such as theft.  Further, plaintiffs clearly misconstrue the reasons stated in defendant's letter advising of the denial of coverage for the claim.  Read in context, the letter sent from defendant to plaintiffs indicates that Sona's failure to file a police report was merely one piece of evidence defendant relied on in declining coverage because it did not appear Hagop's taking of the business assets was a theft.  (*See* Doc. No. 83-1 at 241.)  Plaintiff has failed to come forward with any evidence on summary judgment suggesting that this factual determination was unreasonable as a matter of law.

Second, plaintiffs suggest defendant denied the claim because of late notice, but point to no evidence submitted on summary judgment indicating such is the case.  The court has searched in vain in defendant's declination letter for any such indication.  Defendant does twice reference plaintiffs' late notice of its claim as evidence that Sona did not treat the removal of the property as a theft, by noting that after the July 2010 taking, she changed the policy coverage on August 1, 2010 and ultimately cancelled coverage all together in November 2010, without ever informing defendant of the loss allegedly suffered at the hands of Hagop.  However, these again are reasons defendant concluded the loss was not a theft covered under the policy, not a denial of the claim for late notice.  Again, plaintiff has failed to come forward with any evidence on summary judgment suggesting that this factual determination by defendant was unreasonable as a matter of law.

Third, plaintiffs assert Hagop was not an employee, partner, authorized representative, or person to whom Pacific Marine entrusted property at the time of the alleged theft.  However, once again, plaintiff comes forward with no evidence at summary judgment to support the contention that even if this is true, defendant's denial of coverage on this basis was unreasonable as a matter of law.  As noted above, this is a material issue of fact which is disputed between the parties and therefore cannot be resolved on summary judgment.

/////

Fourth, plaintiffs assert that the denial of insurance coverage was unreasonable as a matter of law because there is a blanket coverage provision on the property at either location.  Again, based upon the evidence before the court on summary judgment it appears that the primary reason stated for defendant's declining coverage was not because of the lack of coverage, but because there was not a compensable loss under the contract—i.e., there was no theft.  Since plaintiffs cannot establish a loss covered under the insurance contract as a matter of law, they cannot establish that they are entitled to summary judgment on their claim that defendant's decision not to cover the alleged loss was unreasonable.

Finally, plaintiffs assert there was no valid business dispute between plaintiffs and Hagop, as established by the state court ultimately awarded a judgment in favor of plaintiffs in the state court action.  Without more, or more importantly without some evidence in support of this contention offered in support of their motion for summary judgment, plaintiffs fail to establish that defendant breached its duty.  Defendant has always claimed Hagop acted under a claim of right and thereby did not engage in theft.  Contrary to plaintiffs' persistently expressed belief, conversion and theft are not analogous.  *See infra.*  Even if the state court did consider the question of whether Hagop's conduct constituted theft— and there is no evidence before this court that it did—plaintiffs have not established that issue preclusion can apply here.  Moreover, as previously concluded, the findings of facts and conclusions of law reflected in the state court's decision is not a proper subject of judicial notice in this proceeding.

In sum, plaintiffs have presented virtually no evidence to support their theory that defendant acted unreasonably in its denial of coverage and thus breached the implied covenant of good faith and fair dealing.  Therefore, plaintiffs' motion for summary judgment in their favor on their breach of the implied covenant of good faith and fair dealing claim of must be denied.

### 3. *Defendant's Motion for Summary Judgment on Breach of Implied Covenant of Good Faith and Fair Dealing*

Defendant also moves for summary judgment in its favor on plaintiffs' claim that it breached the implied covenant of good faith and fair dealing.  According to defendant, summary judgment should be granted in its favor, because there was no coverage under the policy for the

1   claimed loss and, therefore, there could be no bad faith in denying the claim.  For the same

2   reasons the court has denied summary judgment to defendant on its contention that there was no

3   coverage for the claimed loss under the insurance policy in question this argument is

4   unpersuasive.

5          Alternately, defendant argues that it is entitled to summary judgment on this claim of

6   plaintiffs' because under the genuine dispute doctrine, an insurer is not be liable for breach of the

7   implied covenant of good faith and fair dealing, if it had a genuine dispute with the insured as to

8   whether coverage applied.  Defendant also argues that plaintiffs have failed to come forward with

9   evidence supporting elements essential to their case on this claim and on which they will bear the

10  burden of proof at trial.  Defendant contends that it is entitled to summary judgment on this basis

11  with respect to this claim of plaintiffs.

12         As above noted above, plaintiffs have come forward with some evidence on summary

13  judgment suggesting that Hagop physically assaulted Sona and drove her from the business.  If a

14  reasonable jury were to believe this evidence and also believe defendant somehow knew of this

15  behavior, it could conclude that defendant acted unreasonably in denying coverage to Pacific

16  Marine.  *See Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App.

17  4th 335, 346 (2001) (noting "the reasonableness of an insurer's claims-handling conduct is

18  ordinarily a question of fact" for the jury to determine).  Thus, the question here of whether

19  defendant was reasonable in denying coverage involves disputed issues of material fact.

20  Accordingly, defendant's motion for summary judgment with respect to this claim will be denied

21  as to plaintiff Pacific Marine.

22         Concerning plaintiff Sona Vartanian, however, the court has already concluded that

23  defendant is entitled to summary judgment and dismissal of her breach of contract claim in light

24  of the undisputed evidence before the court establishing that she was not a party to the contract

25  and has not successfully demonstrated any theory under which she could prevail on that claim.

26  Under the undisputed evidence before the court on summary judgment, defendant cannot be held

27  liable to plaintiff Sona Vartanian individually in tort for unreasonably failing to provide coverage

28  on Pacific Marine's claim.  Therefore, defendant is entitled to summary judgment and plaintiff

Sona Vartanian's claim for breach of the implied covenant of good faith and fair dealing must be dismissed.

**IV.   Conclusion**

For all of the reasons set forth above:

1.   Plaintiffs' motion for summary judgment (Doc. No. 84) is DENIED;

2.   Defendant's motion for summary judgment (Doc. No. 76) is DENIED IN PART and GRANTED IN PART as follows:

    a.   Defendant's motion is granted with respect to the claims alleged by plaintiff Sona Vartanian, and she is hereby dismissed and TERMINATED as a plaintiff in this action;

    b.   Defendant's motion is denied in relation to the claims alleged by plaintiff Pacific Marine and those claims will proceed; and

3.   Plaintiffs' motion to strike (Doc. No. 122) and defendant's motion to strike (Doc. No. 108) are both DENIED AS MOOT.

IT IS SO ORDERED.

Dated:  **March 17, 2016**                             _____

UNITED STATES DISTRICT JUDGE